THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH SUSTEK, JAMES SPENCE and HAROLD WANDMOE, Defendants.

City Magistrate's Court of New York, Borough of Queens, Long Island City Court, September 23, 1953.

*Denis M. Hurley, Corporation Counsel* (*Harold H. Baker* of counsel), for plaintiff.

*Joseph Sustek, James Spence* and *Harold Wandmoe,* defendants in person.

J. I. SHAPIRO, M.   The three defendants now before the court are charged in one complaint with having, " committed the offense of Disorderly Conduct in violation of Section 722, subdivision 2 of the Penal Law, in that with intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned, the *defendants did sleep upon seats of incoming trains to the annoyance of passengers and employees of the subway* ".

The defendants were arrested in the early morning hours of September 18, 1953, and were arraigned before this court sometime during the morning of that day.

After the charge was read to them and after they were advised of their rights, each defendant stated that he desired to plead guilty to the charge against him.   I then stated that I had great doubt that the complaint in this case stated facts sufficient to constitute the offense of disorderly conduct, and therefore reserved decision upon the application of each defendant to plead guilty.

It is most salutary that our subway and elevated trains be kept free of drunks, vagrants and loafers, and the New York City transit police are doing an excellent job in that regard. However, it is even more important that the rights of every individual, no matter how low his station in life, be safeguarded and that he be given the same protection of the law, and be surrounded by the same safeguards, that would of right be given the loftiest citizen.

These defendants, by all appearances, are derelicts, but they are human souls whose rights may not be trampled on and

against whom a nonexisting offense may be used merely because they present a practical problem to the authorities in charge of our transit system.

Formerly defendants such as these were charged with a violation of subdivision 2 of section 1990-a of the Penal Law which reads as follows: '' Any person who loiters about any toilet * * * or station platform of a subway or elevated railway * * * or who is found sleeping therein or thereon and who is unable to give satisfactory explanation of his presence is guilty of an offense.''

This court repeatedly dismissed such complaints pointing out that nowhere in subdivision 2 of the quoted section is the word '' train '' mentioned, whereas in subdivision 1 of that section the Legislature did include the word '' train '' when it said: '' Any person who, on any *train,* platform, stairway, station or any other appurtenance of a subway or elevated railway '', sells merchandise, solicits any business or trade; entertains the passengers by singing; dancing, etc., or solicits alms, is guilty of an offense.

In other words, the Legislature clearly showed that it meant to make an offense of what was done on '' any train '' in violation of subdivision 1 whereas it deliberately omitted the word *train* from the *sleeping* provisions of subdivision 2.

As a result, defendants who are found asleep in a subway or elevated train are now charged, at least when this court is sitting, with disorderly conduct. I am convinced, after mature reflection, that this charge too is untenable under the circumstances.

The complaint here charges the offense of disorderly conduct in that defendants, '' did sleep on seats of incoming trains to the annoyance of passengers and employees of the subway ''. If the complaint is sufficient, that is all the People are required to prove to make out a case.

It is common knowledge that many persons fall asleep on trains. Would that mean that they are *ipso facto* guilty of disorderly conduct? If so, many of our citizens who use the rapid transit facilities of our city must at least once in their lives have been guilty of disorderly conduct, and this court must confess that if sleeping on a train be the test, he is a confirmed violator of the statutes against disorderly conduct.

The answer would seem to be obvious. The disorderly conduct statute here involved (Penal Law, § 722) when it speaks of doing something '' with intent to provoke a breach of the peace '' and under circumstances '' whereby a breach of the peace may be

occasioned '', does not apply to the *involuntary* act of sleeping or falling asleep.

In *People* v. *Chesnick* (302 N. Y. 58, 60–61) our Court of Appeals said: '' The key phrase of the statute is ' breach of the peace ' and, traditionally, that language means a violation of public order and tranquility [citing authorities]. The classic definition, in modern times, of ' breach of the peace ' is given by *People* v. *Most* (171 N. Y. 423, 429): ' It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community '. * * * And so, to constitute ' disorderly conduct ' there must be an actual or threatened ' breach of the peace ', which, in turn, means a ' disturbance of the tranquility of the People of the State ' (*People* v. *Perry,* 265 N. Y. 362, 365). Here there was no troubling of the wonted calm of the whole community, or of any sizeable segment thereof.''

The complaint in this case merely alleges the *involuntary* act of sleeping. Surely, by any rational test that cannot be disorderly conduct '' destroying or menacing public order and tranquility '' (*Cantwell* v. *Connecticut,* 310 U. S. 296, 308), or which '' by causing consternation and alarm, disturbs the peace and quiet of the community '' (*People* v. *Most,* 171 N. Y. 423, 429), or which causes a '' troubling of the wonted calm of the whole community, or of any sizeable segment thereof '' (*People* v. *Chesnick, supra,* p. 61), or which causes a '' disturbance of the tranquillity of the People of the State ''. (*People* v. *Perry,* 265 N. Y. 362, 365.)

In *People* v. *Wallace* (N. Y. L. J., Aug. 10, 1953, p. 221, col. 3) the court reversed a judgment of conviction, *entered upon a plea of guilty* and discharged the defendant in a situation where the complaint, charging the defendant with disorderly conduct, stated that he '' under the influence of liquor was lying in front of the above address unable to stand on his feet unable to move on when so ordered by '' a police officer ''. Said the court: '' What is alleged in the present information is an involuntary act of the defendant resulting from over-indulgence in alcoholic beverages. There is no averment of voluntary or deliberate action on the part of the defendant * * *. The conclusion must be reached then that the information in this case is jurisdictionally defective ''.

Much as it is desirable to keep our trains free of questionable characters, that result must be achieved by law and not by fiat of the transit police or by judges, both of whom are sworn to

uphold the law as it is and not as possibly they believe it should be. If there should be a change in the law to make sleeping on a train a criminal offense, that is a matter for the consideration of the Legislature and until it has spoken, no court may supply the omission by judicial determination.

As the court said in *People* v. *Erickson* (283 N. Y. 210, 213–214): " Even though we may have little if any doubt that the defendant has been guilty of habitual conduct which, in the public interest, should be curbed, we are constrained to find that an essential element in the charge has not been established. The Legislature alone has power to define penal offenses or misconduct which may be curbed or punished by magistrates or courts of criminal jurisdiction. Not even to arrest habitual misconduct which offends public policy, or to curb or punish the lawless, may a court disregard or distort the law as formulated by the Legislature."

If these defendants are vagrants, they should be tried as such (Code Crim. Pro., § 887), but to let them plead guilty to disorderly conduct, when no such offense is involved, merely because they are not protected by counsel and because they are perhaps regarded by some as " zeros " on the human scale would make a mockery of justice.

The same law applies to these defendants, humble though they be, that would apply to our most eminent citizens if they fell asleep in a subway or elevated train. That is the meaning of true justice; that is what is meant when we proudly proclaim to all the world that ours is a government of laws and not of men.

Under the circumstances, this court refuses to accept the pleas of guilty tendered by these defendants. The complaint is dismissed and the defendants are discharged.